**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| RUSSELL YERDEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:05-CV-215 TS |
| | ) | |
| CECIL DAVIS, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Petitioner Russell Yerden, a prisoner confined at the Indiana State Prison, submitted a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, dealing with a prison disciplinary hearing. On September 2, 2004, Mr. Yerden produced a urine sample to be tested for drug use. The laboratory reported that the sample provided was "adulterated," and a conduct report was written against Mr. Yerden for failing to provide an adequate or unadulterated specimen for testing purposes. On September 22, 2004, a disciplinary board found him guilty and imposed a loss of ninety days of earned credit time. Mr. Yerden unsuccessfully appealed to the facility superintendent and the final reviewing authority.

Where prisoners lose good time credits at prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action, *Wolff v. McDonnell*, 418 U.S. 539 (1974). The fact finder's decision must be supported by "some evidence" in the record. *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455 (1985).

In his first ground, Mr. Yerden asserts that he did not have fair notice that providing an adulterated sample was prohibited. According to the petition, until February 13, 2004, prisoners

who may have provided an adulterated sample were merely retested. His fourth ground is closely related: Mr. Yerden asserts that "there is no rule or policy in the Indiana Department of Corrections that puts a prisoner on notice that when he provides a urine specimen he could face disciplinary action or sanctions for his creatinine level being low or otherwise." (Petition at p. 5).

Executive directive 04-13, which became effective April 1, 2004, but which Mr. Yerden asserts was not posted or announced to prisoners, provided that prisoners could receive specified punishment for providing adulterated samples. In response, the respondent has provided that the executive directive 04-13 was disseminated to prisoners by being posted in the law library and housing units.

The Fourteenth Amendment's due process clause guarantees prisoners advance written notice of the charges "to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 564. Mr. Yerden does not assert that he did not receive notice of the specific charge, which was provided by the conduct report. Prisoners are also entitled to know what conduct is prohibited by the rules. The parties' submissions, establish that providing an adulterated sample was always prohibited, but that the new rule changed the consequences of providing an adulterated sample. The record before the court establishes that Mr. Yerden had sufficient notice of the charges against him.

As his second ground, Mr. Yerden asserts that the disciplinary hearing board violated his due process rights by failing to grant a continuance for him to review the new policy. He states that at the hearing he "requested continuance of the hearing so that [he] could obtain a copy of the new policy to prepare [his] defense." (Pet. at 4). The respondent has provided evidence that Mr. Yerden did not ask for a continuance until after the board had conducted the hearing and announced its decision.

But in any case, the Fourteenth Amendment did not require the board to give Mr. Yerden a continuance of the hearing. The notice required by *Wolff* must be given to the charged prisoner

"at least twenty-four hours before the hearing." *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (citing *Superintendent v. Hill*, 472 U.S. at 454 and *Wolff v. McDonnell*, 418 U.S. at 566). The conduct report was given to Mr. Yerden when he was screened at 1:28 p.m. on September 20, 2004. The disciplinary board conducted its hearing on September 22, 2004, after the twenty-four hour period had passed.

Moreover, even if Mr. Yerden sought a continuance before the board concluded the hearing, he did not need to review the policy to prepare a defense. He was aware that providing an adulterated sample was against the rules and that he was charged with providing an adulterated sample.

In his third ground, Mr. Yerden asserts that "there is no evidence of misconduct or guilt in this case and the weight of the evidence does not support a guilty determination rendering the guilty determination arbitrary and capricious." (Pet. at 5). In order to comply with due process, "there must be a 'written statement by the factfinders as to the evidence relied on and the reasons" for the disciplinary action. *Wolff*, 418 U.S. at 564 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 489 (1972)). The amount of evidence needed to support a finding of guilt in prison disciplinary hearings is very modest; there need only be "some evidence" to support the decision of the prison disciplinary board." *Hill*, 472 U.S. at 455. The "some evidence" standard "does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id.* at 457. A reviewing court must uphold a finding of guilt if "there is any evidence in the record that could support the conclusion reached" by the board. *Id.* at 457. In the appropriate circumstances, the conduct report alone may be sufficient evidence to support a finding of guilt. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). The court must carefully scrutinize the sufficiency of the disciplinary board's statement of facts it relied on to find the prisoner guilty. *Redding v. Fairman*, 717 F.2d 1105, 1116 (7th Cir. 1983).

The respondent argues that the conduct report alone provides some evidence of guilt,

3

citing *McPherson* which provides that in the proper circumstances the conduct report alone may be sufficient evidence to support a finding of guilt. But a conduct report by itself does not always provide sufficient evidence to support a finding of guilt. If that were so, the courts would need look no further than whether a conduct report was issued to the petitioner. And since every disciplinary action is initiated by a conduct report, *Wolff*'*s* requirement that there be "some evidence" supporting a finding of guilt would be meaningless.

The United States District Court held in *McPherson* that in that case, the " report alone provides 'some evidence' for the CAB's decision . . . because the report describes the alleged infraction in sufficient detail." *McPherson*, 188 F.3d at 787. In *McPherson* the author of the conduct report witnessed the behavior described in the conduct report, so the narrative of the conduct report constituted actual evidence. The conduct report against Mr. Yerden, however, merely states second hand information obtained by the writer of the report. In these circumstances, the conduct report is a charging instrument only; it does not provide evidence of guilt.

But the petitioner is also mistaken when he argues that there is no evidence of guilt in this case. The disciplinary hearing board states in its report that it relied on the A.I.T. Lab Report, which states that the result for Creatinine showed that the sample was adulterated. This is "some evidence" that Mr. Yerden provided an adulterated sample.

Mr. Yerden argues that his sample was probably diluted, rather than adulterated, and that the lab simply mis-characterized the result. According to the respondent's submissions, a sample is adulterated where a prisoner has consumed a substance that renders the specimen "impure." A diluted lab result means that the inmate consumed an excessive amount of water causing the urinalysis test. But even if the laboratory erroneously characterized the problem with Mr. Yerden's sample, this court may not reweigh the evidence, and the lab report clearly provides "some evidence" that Mr. Yerden provided an adulterated sample.

4

For the foregoing reasons, the court the court **DENIES** this petition.

SO ORDERED on May 7, 2007.

    S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION